Thank you, Your Honors. I'd like to reserve three minutes at the end for rebuttal if it's necessary. Granted. Will you identify yourself for the tape, please? Sure. My name is Lawrence Hirsch of Rutherford, New Jersey, and I am a court-appointed counsel for Appellant on this matter, Eric Johnson. Thank you. I just want to not address or repeat what's in my briefs, but just address a few other issues that have come out since filing my brief. The first issue being that the appealee's brief largely ignores this Court's recent decisions in 2005 of McCoy and Booth. In those two cases, this Court basically reversed the district court's failure to grant a denial of an evidentiary hearing. In both those cases, the defendants were deprived of the right to an evidentiary hearing. On appeal, this Court reversed. I also want to address, most recently, this Court's 2008 decision in Lilly. That case came out about two months ago, in which this Court basically went ahead and basically affirmed the trial court's denial of an evidentiary hearing. And I think that that case is distinguishable from the present case. In the present case, the issue is whether or not Appellant was not advised that he had the ultimate decision whether or not to testify at trial. In McCoy and Booth, I mean, there was prejudice that the Court believed was pretty clearly shown. And I think in Booth, the Court said there was both ineffective assistance of counsel and prejudice. You've got a prior decision of this Court which says it doesn't make any difference. You can take out just about anything, and this is still pretty much an easy slam-dunk conviction. Where's the possible prejudice that would exist for your client? Well, the prejudice here is that, you know, unlike the Lilly case, where there was the evidence in front of the Court, and it was an issue of whether or not the jury would inherit or a judge would inherit, the possible prejudice here is that you have a statement in the moving papers by the defendant that said that he would rebut each and every material fact. If there is a reasonable probability that had he known that he was the – had the ultimate authority to decide to testify, there's a reasonable probability he would have testified and he would have shown that every witness's testimony was false, and thereby there would be a reasonable probability he would be acquitted, right? That's the prejudice. Correct. But that's all he says. If that's all you have to say, wouldn't we have everyone who was in prison say, well, my attorney didn't tell me I had the ultimate authority, and that's your only argument on deficiency. He didn't use the magic words ultimate authority. And therefore, all I have to do is say, well, the result will be different because I'm going to say something when I testify, and I'll be acquitted, probably. Well, I think what's really – He didn't say more than that. Well, I think what's really asking here is that he'd be given that chance to have the evidentiary hearing. But that means he gets – you know, he wants the evidentiary hearing so he can finally tell us what it is. He will – is going to make the difference. But nothing he tells us here on your appeal indicates what that would be. Well, I mean, it isn't – you know, some of the case law that was cited by the appeal, it discusses the fact of conclusory statements. I mean, he does make the statement that he's going to rebut each and every – What's he going to say? How? Who? What is he going to say? I mean, you have a pro se defendant here who's writing his own petition, and I guess he probably doesn't have the sophistication of an attorney, and he did the best he could in the circumstances. But now he's represented. What's he going to say? What's he going to say? In other words – What's he going to say? I think it's something that – Beyond the conclusory statement, if I had gotten up there, I could have rebutted all this. What could he say that would make one believe that he could rebut all the evidence that was against him, the amount of evidence? I mean, I don't – I mean, I haven't spoken to him about what he would say specifically, but I mean, obviously, you know, you have a situation where you have a credibility issue, and you have the witnesses here are – But he doesn't – he doesn't say why the witnesses are not credible. He just says they aren't. Well, the fact is at least three of them were former drug dealers. And one of them was a DEA agent. Right, but that – Why don't you believe him? That was only with respect to a very, very small limited quantity of drugs. That was .69 grams of heroin. That's a little bit pregnant argument. But how do you deal with – you can't rebut the government's undercover agents, can you? No, but I think there was only one agent, and that was – Okay, let's say – let's talk about all the drug dealers. How would he rebut them? Where was their testimony false? In what respect? Do you know? He hasn't told you? I'm not asking that question. Well, I have one question I'd like to ask, if I may. And I think you may already have answered this in response to something that Judge Berry asked. But is it correct that your client – and this is the way the government postures your argument, so I want to know whether it's accurate or not. Is it correct that your client's position is not that he wasn't told he had the right to testify? It is instead that the attorney didn't tell him you have the, quote, ultimate, unquote, decision whether to testify. Yeah, I think that's the argument. I think that's also the issue that this Court certified as Certificate of Appealability, specifically that. And the – really? I'm sorry. I apologize. Go ahead. All right. So, in essence, it's undisputed that, as Mr. Pettichini said in his affidavit, he told him you can testify. He may have advised him not to, but he told him, look, you have the right to testify. That's not a matter that's disputed. Is that correct? As far as I know. Though there did come up this issue which was raised. That's all I need to know. Although we're not supposed to cite when we write opinions not precedential cases. In looking back, there's an unprecedented case from 2002 called Greco. Are you familiar with that at all? I think I said in my brief I don't remember specifically the facts of it. But the person was not told by his counsel that he had a right to testify. And the Court said that unless you can conclusively show that you will win with respect to one or both prongs of Strickland, you lose. And obviously from what you see from what Judge Berry and I are asking you, we don't see anything in there that leads us to believe he could possibly win with respect to either one of those prongs of Strickland. Well, I mean, we don't know what he would have said had he. But that's what you need to tell us. If he were to testify, here's what he could have said. He could have said this. He could have said that. He could have rebutted this. He could have rebutted that. I mean, you're basically asking us to say, oh, there should be an evidentiary hearing because he claims now after the fact that he could have done something to put into contention certain of the facts. Well, it doesn't say could. He says he will in his petition. He says he will rebut each and every fact. Actually, more particularly, he didn't even say he would take the stand. He says, you know, a reasonable probability I would take the stand. I mean, doesn't he at least have to say, I'll take the stand? He doesn't even go that far. I think it's – I mean, I don't know if – He says it's reasonably probable. Let me help you a little bit because we're giving you a little bit of a hard time. I'm feeling magnanimous. Defendant wrote a letter at sentencing to the sentencing court, and he did say in that letter some of the things that he believed were lies. In other words, he – are you familiar with it? It's in the appendix at 139. Are you familiar with that letter? Okay. Specifically what – He says that – now, of course, he didn't bring this to the habeas court, but it was in the record of the habeas court. He says, I wanted my lawyer to call Annette Gauthier from pretrial services to testify how I was on federal house arrest from June 24, 1998, to October 29, 1999, to show and prove through her records that it was impossible for me to sell drugs down high at court projects when I was in house arrest. It would also have been proof that Shaheed and McQueen committed perjury under oath about selling drugs and my being involved in the attack on Paulette McQueen. It would also have proven I couldn't possibly have been at her apartment in October 1998 like she testified when her face supposed got burned, end quote. Now, there is some – that is it. I mean, that – and that wasn't even brought to our attention other than as buried in the record. Right. But let me just make the record clear. He's only dealing with, quote, unquote, perjury between June 24, 1998 and October 29, 1999, correct, in those – in that statement. And this is a – this is a conspiracy. This is a drug – the Crips were alleged to have gone on for years here. And his involvement goes, you know, years before and years after, correct? Yes, Your Honor. Okay. So that maybe under the most ideal circumstances he would convince that in part the testimony was untrue, but that's it, isn't it? Well, we don't know if there's anything else other than what was written in the letter. That's right. Because we haven't been told. That's right. Is there any – we'll get you back on rebuttal if you want. Okay, that's it, Your Honor. Okay. Mr. Romano. May it please the Court. John Romano of the United States. Is there really much to add here? Well, let me ask you a question or two. I'm curious about the district court's statement that in combination – this is at the appendix, page 10 – that the burden that Petitioner has to overcome to prove ineffective assistance of counsel is no small feat. And given Petitioner's lack of specificity in his pleading, about which we've heard much from the questioning of the panel this morning, quote, in combination with the affirmation by Pettacini stating that Petitioner was informed of his right to testify and waived it voluntarily, unquote, there had to be a dismissal. So my question to you is, did the district court weigh credibility and make a finding of fact on competing submissions from parties without a hearing? No, Your Honor. Okay. How else do we read that in combination with the affirmation by Pettacini? The reason I think the judge said that was, as you pointed out in the defendant's traverse to the response, he doesn't say that Pettacini was wrong about what he said. He simply recaps what he had already said, that he wasn't told about the ultimate authority. He wasn't told that he was – But the district judge here makes two points. He talks about the lack of specificity, which is the point you're addressing right now, and then he says specifically, in combination with the affirmation. Now, is that the district court making a statement that there's lack of specificity, but that's not enough? I'm also weighing credibility here on paper. I don't think so, Your Honor, because the defendant addresses the Pettacini affidavit in his traverse, and he does not take exception to it. He doesn't say what Pettacini said was incorrect. He simply reasserts again that he didn't know he had the ultimate authority, which the Pettacini affidavit does not talk about at all. The affirmation, as I understand his argument addressed to the deficiency prong of Strickland, the argument is that the affirmation doesn't go far enough. He accepts it as far as it goes, but it doesn't go far enough. Is that a correct reading? I think so. I think if you look at the defendant's motion, his traverse, and even his brief on this appeal, and the letter that you point to as well, which he never says, I wanted to testify. All of it shows that he was told he had the right to testify. He was advised against testifying, and that's pretty much it. He didn't say he wanted to testify. He didn't tell the counsel, I really, really want to testify. Please let me. There were no threats. There's no evidence, no allegations that the counsel took that right and said, well, I'm going to make that decision for you. None of that. So I think this statement is simply that the defendant has essentially accepted the Pettacini affidavit for as far as it goes, and given those facts, there's simply no relief. There's no deficiency in counsel's performance. Any questions? We have no further questions, Mr. Romano, unless there's something you wish to add. I think the court has touched on all the major points. He doesn't say he definitely would have testified. He doesn't give anything except for vague and conclusive allegations, and quite frankly, and you might remember, Your Honor, from the direct appeal, the evidence in this case was overwhelming of a decade's worth of violence, drug distribution, and gang activity. Another government case in which the evidence was overwhelming, quote, unquote. Thank you very much, Mr. Romano. Thank you. Thank you, Your Honor. Thank you very much. Thank you, Mr. Hirsch.